**Dana LINDEMANN,**
**Petitioner, Appellant,**

**v.**

**COMMISSIONER OF PUBLIC**
**SAFETY, Respondent.**

**No. C5-86-1982.**

Court of Appeals of Minnesota.

May 5, 1987.

J. Brian O'Leary, O'Leary & Moritz, Springfield, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

Appellant was arrested for driving while under the influence and his license was revoked pursuant to the implied consent law for refusal to submit to testing. He petitioned for judicial review, and the trial court sustained the revocation. Appellant brings an appeal from the trial court order. We affirm.

## FACTS

Deputy Sheriff James J. Meyer arrived at an accident scene shortly before 3:00 a.m. on August 3, 1986. He learned appellant's vehicle had struck two cows, and saw the extensive damage to the vehicle. Appellant, who was bleeding heavily, was taken to the hospital before Meyer arrived on the scene. The farmer who owned the cows told Meyer that appellant and a friend had asked him not to call the sheriff because they had been drinking. Redwood Falls City Officer Richard Wyffels was dispatched to the hospital to read the implied consent advisory to appellant if necessary.

Wyffels arrived at the emergency room of the hospital shortly after 3:00 a.m., and

saw appellant lying on a cot. He had "cuts and marks" on his head, and a doctor was treating him. Wyffels asked appellant what had happened; appellant said he had hit several cows. Wyffels testified that appellant appeared to understand his questions and responded appropriately and understandably.

Wyffels observed indicia of intoxication and formed the opinion that appellant was under the influence of alcohol. He read the implied consent advisory to appellant at 3:11 a.m. and asked if he understood it; appellant said he did not. Wyffels then read it again, one line at a time, to determine what he did not understand. When he again asked appellant if he understood it, appellant did not respond. Wyffels warned appellant that he would take no response as a refusal and read the advisory for a third time. He again received no response. The final reading of the advisory was completed at 3:22 a.m. When Wyffels asked appellant why he was not cooperating, appellant said it was because the doctor was putting stitches in his head, and that was all he wanted to think about.

The officer testified that he believed he had only two hours from the time of the accident to read the implied consent advisory, and that he did not wait until the doctor finished working on appellant because he was concerned about exceeding what he believed was the time limit.

Appellant testified that he sustained injuries, which included cuts above his left eyebrow, on his forehead, and on his hands. He went to the emergency room at Redwood Falls Hospital and received stitches for his cuts. He said that Officer Wyffels talked to him in the emergency room while the doctor was working on him. When Wyffels read him the advisory, he did not agree or refuse to take the test. While the doctor was putting in stitches, he felt pain and all he could think about was trying to keep himself from feeling more pain. He said that it was hard for him to understand the advisory when the doctor was putting in the stitches.

Appellant's driving privileges were revoked for refusing testing, and he peti-tioned for judicial review. The trial court sustained the revocation, and appellant brings an appeal.

## ISSUES

1. Did appellant refuse testing under the implied consent law?

2. Is the issue of reasonable refusal properly before this court?

3. Was appellant's refusal to submit to testing reasonable?

## ANALYSIS

 1. The police officer read the implied consent advisory to appellant three times, and told him failure to respond would constitute a refusal. Appellant did not verbally agree to or refuse testing. His driving privileges were revoked for refusal pursuant to Minn.Stat. § 169.123, subd. 4 (1986). Refusal to reply to a request to take an alcohol concentration test may constitute a refusal to submit to testing. *Gabrick v. Commissioner of Public Safety*, 393 N.W.2d 23, 25 (Minn.Ct.App. 1986). There was no showing that the officer interfered with medical treatment. Nor was there any showing that appellant's injuries rendered him incapable of refusal, so that his consent should have been deemed continuing and he should have been given a test pursuant to Minn. Stat. § 169.123, subd. 2c (1986). *Douglas v. Commissioner of Public Safety*, 385 N.W.2d 850, 853–54 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. June 19, 1986). Appellant's failure to respond constituted a refusal to submit to testing.

2. Appellant also asserts on appeal that his refusal was reasonable. The Commissioner argues that this issue is not properly before the court because it was not specified in the petition for judicial review. Minn.Stat. § 169.123, subd. 5c.

 The purpose of the specificity requirement is to give the Commissioner notice of the issues upon which he must present evidence. *Smith v. Commissioner of Public Safety*, 401 N.W.2d 414, 417 (Minn.Ct.App.1987). Upon proper motion, failure to state the specific ground will

result in preclusion of the issue at hearing and limitation of judicial review. *Palbicki v. Commissioner of Public Safety*, 347 N.W.2d 512, ·515 (Minn.Ct.App.1984). Here, appellant argued the issue of reasonable refusal in his final argument, basing his claim on evidence presented at the hearing. Yet the Commissioner failed to object to this argument. Because the Commissioner did not object at the hearing, we will consider the issue of reasonable refusal on appeal.

3. A petitioner may assert as an affirmative defense that his refusal was reasonable. Minn.Stat. § 169.123, subd. 6. The determination of whether a refusal was reasonable is a question of fact for the trial court. *Palbicki*, 347 N.W.2d at 514. Findings of fact will be reversed only if clearly erroneous. *State, Department of Highways v. Beckey*, 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971). An erroneous construction of law may be reversed on appeal. *Noren v. Commissioner of Public Safety*, 363 N.W.2d 315, 317 (Minn.Ct.App. 1985). The trial court here, which sustained the revocation, necessarily rejected appellant's argument that his refusal was reasonable.

Appellant argues that the officer did not wait until his medical treatment was completed to invoke the implied consent law because he erroneously believed that there was a two hour time limit in which to request the test. Even though Wyffels may have erroneously believed he was under time constraints,[1] he nonetheless read the implied consent advisory three times, in an attempt to obtain an answer from appellant.

Appellant's argument that his failure to respond was reasonable because his injuries were being treated at the same time appears to have merit; however, it must be examined more closely. One way in which a driver may attract the attention of a police officer is if he is involved in an accident, in which injuries may be present.

See, e.g., *Thornton v. Commissioner of Public Safety*, 384 N.W.2d 606, 607 (Minn. Ct.App.1986). The implied consent law is a remedial statute which will be liberally interpreted in favor of the public interests involved, and against the private interests of the driver. *State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). The effectiveness of the law would be diminished if an officer were required to wait until an injured driver was treated for his injuries before invoking the implied consent law. If the injuries are severe enough that the driver is unconscious or incapable of refusal, his consent will be deemed continuing and he may be given the test. Minn.Stat. § 169.123, subd. 2c. If not, the driver still has the option of consenting to or refusing the test. The trial court, which heard the evidence and the appellant's arguments that his refusal was reasonable, sustained the revocation. We hold the trial court's finding was not clearly erroneous and affirm.

### DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.

---

**1.** There is no requirement in the implied consent law that a test be taken within two hours of driving. *Rohlik v. Commissioner of Public Safe-* *ty*, 400 N.W.2d 791, 793 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987).