*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1054**

Bridget Colleen Johnson, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed March 7, 2016
Affirmed
Worke, Judge**

Hennepin County District Court
File Nos. 27-CV-14-16166, 27-CR-14-27762

Douglas V. Hazelton, Bloomington, Minnesota (for appellant)

Lori Swanson, Attorney General, William J. Young, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges the district court's order sustaining the revocation of her driver's license, arguing that the implied-consent advisory violates due process because it fails to inform a driver of all test-decision consequences, and that her pre-test right to

counsel was not vindicated because the aiding-and-abetting statute prevents an attorney from advising a driver of all testing options. We affirm.

## FACTS

On September 21, 2014, Officer Todd Peterson responded to a motor-vehicle accident. The driver, appellant Bridget Colleen Johnson, appeared dazed, her eyes were bloodshot, and her speech was "slurred, slow and sloppy." Johnson stated that she had come from a restaurant/bar where she drank three glasses of wine. Johnson emitted a strong odor of an alcoholic beverage; failed field sobriety tests; and submitted to a preliminary breath test (PBT), which indicated a result of 0.149 alcohol concentration (AC). Officer Peterson arrested Johnson for driving while under the influence (DWI).

The officer transported Johnson to the jail, where he read her the implied-consent advisory until she indicated her understanding. Johnson stated that she wanted to call an attorney. Johnson was provided a telephone, her cell phone, and a phone directory. Johnson eventually contacted someone, presumably an attorney. Johnson had the use of the phone for approximately 45 minutes. Johnson agreed to take a breath test, and the result showed 0.18 AC. Johnson was charged with DWI and her driver's license was revoked.

Johnson challenged the revocation of her driver's license, arguing that she was not informed of all testing consequences and that her attorney was prevented from fully advising her because of the aiding-and-abetting statute. Johnson waived her appearance at the implied-consent hearing and the parties stipulated to the facts contained in the

2

police packet, including the implied-consent advisory, the test results, and the incident report.

The district court sustained the revocation of Johnson's driver's license, concluding that Officer Peterson provided Johnson with the required information before requesting that she submit to a test, and that Johnson had adequate time to consult with counsel. The district court determined that an attorney may not advise a client to commit a crime (test refusal), but may explain the consequences of different courses of action. This appeal follows.

## D E C I S I O N

### *Due process*

Johnson first argues that her due-process rights were violated because the implied-consent advisory does not inform of all consequences of chemical testing. Whether an implied-consent advisory violates a driver's due-process rights is a question of law, which this court reviews de novo. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn. 2005). We will reverse a district court's conclusions of law only when the district court "has erroneously construed and applied the law to the facts of the case." *Fehler v. Comm'r of Pub. Safety*, 591 N.W.2d 752, 754 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. July 28, 1999).

When an officer arrests a driver for DWI and requests that she submit to a chemical test, the officer must inform the driver:

(1) that Minnesota law requires the person to take a test:

(i) to determine if the person is under the influence of alcohol, controlled substances, or hazardous substances;

(ii) to determine the presence of a controlled substance listed in Schedule I or II or metabolite, other than marijuana or tetrahydrocannabinols; and

(iii) if the motor vehicle was a commercial motor vehicle, to determine the presence of alcohol;

(2) that refusal to take a test is a crime;

(3) if the peace officer has probable cause to believe the person has violated the criminal vehicular homicide and injury laws, that a test will be taken with or without the person's consent; and

(4) that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test.

Minn. Stat. § 169A.51, subd. 2(a) (2014). It is well-settled law that a police officer is not required to advise a driver of all consequences of taking a chemical test, and that the only mandatory advisory is that required under the implied-consent statute. *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 853 (Minn. 1991) (stating that "a state does not violate the fundamental fairness inherent to due process by choosing not to advise individuals of all the possible consequences they could face in refusing a breath test").

Here, Johnson concedes that the implied-consent advisory read to her is the one mandated by statute. Johnson submitted to a breath test that showed 0.18 AC. She claims that her due-process rights were violated because the advisory contains no warning that "testing 0.16 or more will result in worse administrative penalties than refusing the test."

A similar issue was raised in *Magnuson v. Comm'r of Pub. Safety*. 703 N.W.2d 557 (Minn. App. 2005). In *Magnuson*, the commissioner challenged the district court's

4

conclusion that the implied-consent advisory violated Magnuson's due-process rights because it did not warn that driving with an AC of 0.20 or more is an aggravating factor that could increase the penalty. *Id.* at 561. This court held that the district court erred in its conclusion because "due process does not require that the implied-consent advisory warn a driver of every possible consequence of taking or refusing to take a chemical test and . . . the advisory [read] was accurate and did not permit the police to threaten . . . charges that the state may not impose." *Id.* at 562.

Here, the officer read Johnson the advisory that contained the information required by section 169A.51, subdivision 2. He did not inform Johnson that "testing 0.16 or more will result in worse administrative penalties than refusing the test" because he was not required to do so. *See Catlin v. Comm'r of Pub. Safety*, 490 N.W.2d 445, 447 (Minn. App. 1992) ("The failure of the advisory to warn of every possible consequence [related to a driver's specific situation] does not violate fundamental fairness inherent in due process."). The district court did not err in concluding that the implied-consent advisory did not violate Johnson's due-process rights.

***Right to counsel***

Johnson next argues that her pre-test right to counsel was not vindicated because her attorney was prohibited from fully advising her. When the facts are not in dispute, as in this case, this court makes a legal determination whether a driver "was accorded a reasonable opportunity to consult with counsel based on the given facts." *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 840 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992).

A driver has a limited right to counsel before deciding whether to submit to chemical testing. *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). This right is vindicated when the driver is provided with a telephone and given a reasonable time to contact and consult with an attorney. *Id.*

Here, Johnson was provided a telephone, her cell phone, and a directory. And the parties "agree[d] that [Johnson] had an adequate amount of time to contact an attorney." But Johnson claims that she did not receive meaningful consultation because the aiding-and-abetting statute prevented her attorney from advising her that it may be in her best interests to refuse a test because test refusal is a crime.

> Every person who commits or attempts to commit, conspires to commit, or aids or abets in the commission of any act declared in this chapter to be an offense, whether individually or in connection with one or more other persons or as principal, agent, or accessory, is guilty of that offense, and every person who falsely, fraudulently, forcibly, or willfully induces, causes, coerces, requires, permits, or directs another to violate any provision of this chapter is likewise guilty of that offense.

Minn. Stat. § 169A.78 (2014). But an attorney does not induce, cause, coerce, require, permit, or direct a driver to violate a DWI law by informing the driver of the consequences of test refusal. The supreme court has recognized that the "*choice* to submit or refuse to take the test may be a difficult one." *State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013) (emphasis added) (quotation omitted), *cert. denied*, 134 S. Ct. 1799 (2014). And a driver makes that choice after consulting with an attorney who "functions as an objective advisor who could explain the alternative *choices*." *Id.* at 571-72 (emphasis added) (quotation omitted). Thus, providing information, including

information on test refusal, is not the equivalent of aiding and abetting a driver in violating the DWI law. The district court did not err in concluding that Johnson's pre-test right to counsel was vindicated.

**Affirmed.**