*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2031**

Richard Lee Zimmerman, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 29, 2016
Affirmed
Toussaint, Judge\***

Washington County District Court
File No. 82-CV-15-2369

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter Magnuson, Amy J. Tripp-Steiner, Assistant
Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Toussaint,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**TOUSSAINT**, Judge

On appeal from the district court's order sustaining the revocation of his license

and driving privileges, appellant argues (1) the district court erred by refusing to rescind

_____

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

the revocations because the deputy violated appellant's right to due process by reading the wrong implied-consent advisory; (2) the revocation of his driver's license and commercial endorsement should be rescinded because appellant did not refuse to submit to chemical testing; and (3) the criminal test-refusal statute is unconstitutional and therefore the implied-consent advisory read to appellant violated his constitutional right to due process and unconstitutional conditions. Because the district court did not err in its order, we affirm.

## DECISION

Appellant Richard Lee Zimmerman challenges the district court's order sustaining the revocation of his driver's license and driving privileges based on his refusal to submit to breath testing. Minnesota's implied-consent law provides that if a law-enforcement officer has "probable cause to believe [that a] person was driving, operating, or in physical control of a motor vehicle," while impaired, the officer may request that the driver submit to chemical testing. Minn. Stat. § 169A.51, subd. 1 (a), (b) (2014). At the time a test is requested, the driver must be read an implied-consent advisory. *Id*., subd. 2(a) (2014). If the driver refuses to permit a test, "a test must not be given," but the commissioner of public safety shall revoke the driver's license for a period of one year or more. Minn. Stat. § 169A.52, subds. 1, 3(a) (2014).

Zimmerman, who was driving a 15-passenger conversion van with a business logo on its side, was arrested on suspicion of driving while impaired. The arresting deputy first read him the regular implied-consent advisory, but after giving Zimmerman time to call an attorney, the deputy stated that he believed he had read the wrong advisory. He

2

then read Zimmerman the implied-consent advisory for a person driving a commercial motor vehicle on the mistaken belief that Zimmerman's van met the statutory definition for a commercial motor vehicle.[1]

Zimmerman argues that the deputy's reading of the incorrect implied-consent advisory amounted to legal error and that his due-process rights were violated when he was read the wrong advisory. Whether an implied-consent advisory violates a driver's due-process rights presents a question of law, which this court reviews de novo. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn. 2005). This court will reverse a district court's legal conclusions only if the district court "has erroneously construed and applied the law to the facts of the case." *Fehler v. Comm'r of Pub. Safety*, 591 N.W.2d 752, 754 (Minn. App. 1999) (quotation omitted), *review denied* (Minn. July 28, 1999).

In support of his argument, Zimmerman cites *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848 (Minn. 1991). In that case, the Minnesota Supreme Court held that the portion of the implied-consent advisory that warned of possible criminal penalties violated the due-process rights of a first-time offender, who could not be charged with criminal test refusal. *McDonnell*, 473 N.W.2d at 853, 855. The supreme court concluded that the advisory, which threatened criminal charges that the state was

---

[1] It is undisputed that Zimmerman's van did not meet the statutory definition for a "commercial motor vehicle": a vehicle that is a bus or school bus; is used to transport hazardous materials; has a gross vehicle weight of more than 26,000 pounds; or has a towed unit with a gross vehicle weight of 10,000 pounds, and the combined vehicle weights are more than 26,000 pounds. Minn. Stat. § 169.011, subd. 16(a) (2014); *see* Minn. Stat. § 169A.03, subd. 4 (2014) (providing that this category applies for purposes of driving-while-impaired laws).

not authorized to impose, misled the driver and was unconstitutional as applied to her. *Id*. at 855.

Here, unlike *McDonnell*, there is no record evidence that Zimmerman was misled by the reading of the incorrect advisory. By statute, the implied-consent advisory must inform a driver that Minnesota law requires a test to determine if he or she "is under the influence of alcohol, controlled substances, or hazardous substances"; to determine the presence of certain controlled substances; "and . . . if the motor vehicle was a commercial motor vehicle, to determine the presence of alcohol." Minn. Stat. § 169A.51, subd. 2(a)(1). The advisory must also inform the driver that chemical-test refusal is a crime. *Id*., subd. 2(a)(2). Zimmerman argues that the commercial motor-vehicle implied-consent advisory read to him violated his due-process rights because it informed him that "Minnesota law requires you to take a test to determine the presence of alcohol," but it did not include the language "under the influence of alcohol."

But "[d]ue process does not require that the advisory explain every potentially unclear application of the law." *Catlin v. Comm'r of Pub. Safety*, 490 N.W.2d 445, 447 (Minn. App. 1992). For instance, the supreme court has held that the implied-consent advisory is not constitutionally defective when it informs the driver that test refusal is a crime, but does not specifically warn that the crime is a gross misdemeanor. *State v. Melde*, 725 N.W.2d 99, 106 (Minn. 2006); *see also Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 562 (Minn. App. 2005) (concluding that failure of the implied-consent advisory to mention aggravating factor of driving with an alcohol concentration of 0.20 or more is not a due-process violation because the advisory "accurately summarized the

4

statutory language" and "did not threaten charges that the state was not authorized to impose"). We conclude that the district court did not err in determining that the advisory read to Zimmerman complied with statutory requirements and did not mislead him about his legal obligation to take a test or the consequences of failure to submit to chemical testing. Therefore, no due-process violation occurred.[2]

Zimmerman also challenges the district court's finding that he refused chemical testing. Whether a driver has refused to submit to chemical testing presents a question of fact, which this court reviews for clear error. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. App. 2014). "[R]efusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). Therefore, circumstantial evidence can establish a driver's unwillingness to take a test even without a statement of unwillingness. *Id*. at 101.

Here, after Zimmerman unsuccessfully attempted to reach an attorney for an hour and ten minutes, the deputy told him that he would have to make the testing decision on his own and asked him whether he would be willing to take a breath test. Zimmerman stated that he still wanted to consult with an attorney before answering. The deputy told

---

[2] We additionally note that if we were to conclude that the use of the language "the presence of alcohol," without the accompanying language, "under the influence of alcohol," did amount to a due-process violation, the commercial implied-consent advisory would always violate a driver's due-process rights because a test failure for a commercial motor-vehicle driver is not submitted for license revocation unless the test shows an alcohol concentration of 0.04 or more. Minn. Stat. § 169A.52, subds. 2(a)(2), 4(b).

5

him that he would need a yes or no response. Zimmerman responded, "I'm not going to say no if it's held against me and I'm legally charged." The deputy stated that he would consider that answer a refusal; Zimmerman replied, "I refute that." The deputy then finished the paperwork involved in a license revocation.

Zimmerman maintains that the commissioner did not present any evidence to show that he actually refused testing. He points out that, although he did not expressly say "yes" to the deputy's inquiry, he stated that he was "not going to say no," which is a double negative, and he then refuted the deputy's claim that he was refusing testing. He argues that if his answers were unclear, the deputy should have begun the testing process to ascertain definitively whether he was refusing the test. But after reading Zimmerman the implied-consent advisory and asking him whether he would take a test, the deputy was not required to provide more information or take additional action to determine whether or not Zimmerman was refusing a test. *Cf. Ruffenach v. Comm'r of Pub. Safety*, 528 N.W.2d 254, 256-57 (Minn. App. 1995) (stating that the only information that an officer is required to provide to a driver is the implied-consent advisory).

Zimmerman does not maintain that he was confused by the advisory or did not have an adequate amount of time for the vindication of his limited right to counsel. He had over an hour in which to contact an attorney, and the deputy then reasonably informed Zimmerman that he needed to state whether he would take a test or not. "An officer is not required to wait for the driver to decide at his convenience whether or not he will submit to testing." *Gabrick v. Comm'r of Pub. Safety*, 393 N.W.2d 23, 25 (Minn. App. 1986); *see id.* (stating that "[a] reasonably prompt decision whether the driver will

6

take the test is in keeping with the purpose of the statute to protect the public from the hazards of intoxicated drivers"). The district court did not clearly err by determining that Zimmerman's words and actions under the totality of the circumstances amounted to test refusal. We affirm the district court's order sustaining the revocation of Zimmerman's driver's license and driving privileges.[3]

**Affirmed.**

---

[3] We note that Zimmerman additionally argues that the implied-consent law violates his right to due process because it threatens prosecution under an unconstitutional criminal statute. But he concedes that this argument falls within *State v. Bernard*, in which the Minnesota Supreme Court held that Minnesota's test-refusal statute is constitutional as applied to a breath-test refusal. 859 N.W.2d 762, 767 (Minn. 2015), *aff'd sub nom. Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). And although Zimmerman maintains that the test-refusal statute violates the unconstitutional-conditions doctrine, this court has rejected that argument. *State v. Bennett*, 867 N.W.2d 539, 543 (Minn. App. 2015), *review denied* (Minn. Oct. 28, 2015).